**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Alan Greer,<br><br>    Plaintiff,<br><br>vs.<br><br>Jo Anne B. Barnhart, Commissioner of Social Security,<br><br>    Defendant. | CIV 05-3644-PHX-MHB<br><br>**ORDER** |

Pending before the Court is Plaintiff Alan Greer's appeal from the Social Security Administration's final decision to deny his claim for Disability Insurance Benefits and Supplemental Security Income. After reviewing the administrative record and the arguments of the parties, the Court now issues the following ruling.

**I. PROCEDURAL HISTORY**

On April 1, 2003, Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income pursuant to Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416, 423, 1381(a) and 1382(c) alleging disability since October 15, 2001. (Transcript of Administrative Record ("Tr.") at 81-83.) His application was denied both initially and on reconsideration. (Tr. at 45-48; 55-58.) Following a timely request from Plaintiff (Tr. at 59-60), a hearing was held before Administrative Law Judge ("ALJ") Joan G. Knight on January 19, 2005. (Tr. at 459-97.) After taking the matter under advisement, the ALJ denied Plaintiff's claims on February 25, 2005, finding Plaintiff not disabled. (Tr. at 16-25.)

1    Plaintiff subsequently requested review of the ALJ's decision by the Appeals Council.
2 (Tr. at 15.) On September 15, 2005, the Appeals Council denied Plaintiff's request for
3 review, thereby rendering the ALJ's decision the final decision of the Commissioner. (Tr.
4 at 11-14.) Plaintiff then commenced the instant action for judicial review pursuant to 42
5 U.S.C. §§ 405(g), 1383(c)(3). On August 14, 2006, Plaintiff moved for summary judgment.
6 Defendant filed a Cross-Motion for Summary Judgment and Response to Plaintiff's Motion
7 for Summary Judgment on September 18, 2006.

## II.  STANDARD OF REVIEW

9    The Court must affirm the ALJ's findings if the findings are supported by substantial
10 evidence and are free from reversible legal error. See Reddick v. Chater, 157 F.3d 715, 720
11 (9th Cir. 1998); Marcia v. Sullivan, 900 F.2d 172, 174 (9th Cir. 1990). Substantial evidence
12 means "more than a mere scintilla" and "such relevant evidence as a reasonable mind might
13 accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401
14 (1971); see Reddick, 157 F.3d at 720.

15    In determining whether substantial evidence supports a decision, the Court considers
16 the administrative record as a whole, weighing both the evidence that supports and the
17 evidence that detracts from the ALJ's conclusion. See Reddick, 157 F.3d at 720. "The ALJ
18 is responsible for determining credibility, resolving conflicts in medical testimony, and for
19 resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995); see
20 Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989). "If the evidence can reasonably
21 support either affirming or reversing the [Commissioner's] conclusion, the court may not
22 substitute its judgment for that of the [Commissioner]." Reddick, 157 F.3d at 720-21.

## III.  THE ALJ'S FINDINGS

24    In order to be eligible for disability or social security benefits, a claimant must
25 demonstrate an "inability to engage in any substantial gainful activity by reason of any
26 medically determinable physical or mental impairment which can be expected to result in
27 death or which has lasted or can be expected to last for a continuous period of not less than
28

1   12 months." 42 U.S.C. § 423(d)(1)(A). An ALJ determines a claimant's eligibility for
2   benefits by following a five-step sequential evaluation:

3       (1)   determine whether the applicant is engaged in "substantial gainful activity";

4   
5       (2)   determine whether the applicant has a medically severe impairment or combination of impairments;

6       (3) determine whether the applicant's impairment equals one of a number of listed impairments that the Commissioner acknowledges as so severe as to
7       preclude the applicant from engaging in substantial gainful activity;

8       (4) if the applicant's impairment does not equal one of the listed impairments, determine whether the applicant is capable of performing his or her past
9       relevant work;

10      (5) if the applicant is not capable of performing his or her past relevant work, determine whether the applicant is able to perform other work in the national
11      economy in view of his age, education, and work experience.

12  See Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987) (citing 20 C.F.R. § 404.1520). At the
13  fifth stage, the burden of proof shifts to the Commissioner to show that the claimant can
14  perform other substantial gainful work. See Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir.
15  1993).

16      The ALJ found that Plaintiff had not engaged in "substantial gainful activity" since
17  his alleged onset date. (Tr. at 24.) The ALJ determined that Plaintiff had a history of
18  recurrent right shoulder dislocation with hemiarthroplasty, major depressive disorder, and
19  low-to-borderline intellectual functioning, which were severe impairments, but did not, alone
20  or in combination, meet or medically equal any of the impairments listed in 20 C.F.R. Part
21  404, Subpart P, Appendix 1 of the Commissioner's regulations. (Tr. at 24.) The ALJ
22  concluded that, notwithstanding these impairments, Plaintiff retained the residual functional
23  capacity to lift/carry ten pounds frequently and twenty pounds occasionally; sit, stand, and
24  walk without restriction; perform repetitive maneuvers with the lower extremities; and
25  perform no more than occasional pushing and pulling with the upper extremities.[1] (Tr. at 22-
26  

27      [1] "Residual functional capacity" is defined as the most a claimant can do after
28  considering the effects of physical and/or mental limitations that affect the ability to perform

- 3 -

23.) Plaintiff could not climb ladders, ropes, or scaffolds, but could balance, kneel, crouch, and climb ramps/stairs. (Tr. at 23.) Plaintiff had limited reaching capacity in all directions with the right upper extremity including no overhead reaching, but he could reach in all directions with the left upper extremity. (Tr. at 23.) The ALJ determined that Plaintiff was unlimited in his abilities to feel, fine finger, and perform gross manipulations with both hands, but should avoid concentrated exposure to hazardous heights and moving machinery. (Tr. at 23.) The ALJ also stated that Plaintiff retained the mental capacity to understand, remember, and carry out simple, repetitive instructions in a low-stress environment. (Tr. at 23.) He maintained satisfactory pace and persistence, attendance, and productivity, and his social skills and adaptive functioning were adequate. (Tr. at 23.)

Based on the foregoing, the ALJ concluded that Plaintiff's residual functional capacity prevented him from performing his past relevant work as a car detailer, but did not prevent him from performing other jobs existing in significant numbers in the national economy including work as an unarmed security guard, parking lot attendant, and ticket taker. (Tr. at 23-24.) Accordingly, because Plaintiff's capacity for light work was substantially intact, the ALJ determined that Plaintiff was not disabled. (Tr. at 25.)

## IV. DISCUSSION

In his motion for summary judgment, Plaintiff contends that the ALJ (1) erred at step five of the five-step sequential evaluation by failing to set forth a detailed decision describing Plaintiff's residual functional capacity. With regard to step five, Plaintiff also alleges that the ALJ (2) failed to properly assess the weight afforded to the opinions of treating and consulting physicians, (3) failed to properly assess his subjective complaints, and (4) failed to properly consider vocational issues and job descriptions as set forth in the Dictionary of Occupational Titles.

---

work-related tasks. See 20 C.F.R. § 404.1545(a).

- 4 -

**A.     Plaintiff's Residual Functional Capacity Assessment**

Plaintiff argues that the ALJ erred by failing to set forth a detailed decision describing his residual functional capacity. Specifically, Plaintiff asserts that the residual functional capacity assessment fails to contain detailed findings regarding his right arm restrictions. Plaintiff also claims that the ALJ failed to address conflicting opinions regarding his ability to feel, fine finger, and perform gross manipulations, and failed to provide a detailed rationale regarding his mental impairments.

The RFC assessment must be based on all of the relevant evidence in the record, including the effects of symptoms that are reasonably attributed to a medically determinable impairment. See Social Security Ruling 96-8p. In addition, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe,'" because such limitations may be outcome determinative when considered in conjunction with limitations or restrictions resulting from other impairments. Id. SSR 96-8p provides a blueprint for what an RFC assessment must contain in all cases in which symptoms are alleged: (1) a thorough discussion and analysis of the objective medical and other evidence, including the individual's complaints of pain and other symptoms and the ALJ's personal observations, if appropriate; (2) a resolution of any inconsistencies in the evidence as a whole; and (3) a logical explanation of the effects of symptoms, including pain, on the individual's ability to work.

The ALJ, after conducting a detailed review of the record, concluded that Plaintiff was capable of performing a range of light work with no more than occasional pushing and pulling with both upper extremities; limited reaching in all directions with the right upper extremity including no overhead reaching, but reaching in all directions with the left upper extremity; unlimited feeling, fine fingering, and gross manipulations with both hands; and no restrictions in sitting, standing, walking, or performing repetitive maneuvers with the lower extremities. (Tr. at 23.) The ALJ also concluded that Plaintiff retained the mental capacity to understand, remember, and carry out simple, repetitive instructions in a low stress

1  environment, and could maintain satisfactory pace, persistence, attendance, and productivity.
2  (Tr. at 23.)

3        In considering Plaintiff's right arm restrictions as part of the residual functional
4  capacity assessment, the ALJ addressed Plaintiff's subjective allegations and found them
5  partially credible. (Tr. at 21.) The ALJ found Plaintiff "somewhat credible in stating that
6  since his right shoulder surgery, he has had decreased range of motion as well as less pain
7  in that shoulder." (Tr. at 21.) However, the ALJ determined that Plaintiff's "subjective
8  complaints of disabling pain" were not supported by the greater objective record or Plaintiff's
9  own testimony. (Tr. at 21.) The ALJ stated that on August 11, 2003, Plaintiff rated his pain
10 at 3 on a scale of 1 to 10 – 10 being the greatest. (Tr. at 21.) Plaintiff also described his pain
11 as a chronic, continuous, dull ache, but that his pain level as described was acceptable. (Tr.
12 at 21.) Plaintiff testified that he uses only one Vicodin per day, if he needs it, and that it
13 provides full relief of his pain. (Tr. at 21.)

14        The ALJ further found that Plaintiff uses his right hand on a limited basis for eating
15 and occasional writing, and that despite persistent right hand palmar numbness, he can hold
16 onto his keys with the right hand. (Tr. at 21) Plaintiff also testified that he cannot lift his
17 right arm overhead, but that he helps with housework, including washing the dishes and
18 vacuuming the floors. (Tr. at 21.)

19        The ALJ also considered the medical opinion of Wayne S. Broky, M.D. (Tr. at 258-
20 263), and the opinions of the State agency's reviewing physicians (Tr. at 188-195; 201-208;
21 250-257; 411-418) in addressing Plaintiff's right arm restrictions. (Tr. at 21-22.) In her
22 decision, the ALJ detailed Dr. Broky's opinion, stating that Plaintiff could lift and carry less
23 than five pounds with the right upper extremity at any time, and that he could lift and carry
24 up to one hundred pounds occasionally and ten pounds frequently with the left upper
25 extremity. (Tr. at 21.) Dr. Broky opined that Plaintiff could sit, stand, and walk for six hours
26 a day, frequently climb stairs, balance, stoop, kneel, and crouch, occasionally crawl, but
27 never climb ladders, with limited right arm for reaching, handling, and fingering. (Tr. at 21.)
28 The ALJ stated that she gave the opinions of Dr. Broky and the State agency's reviewing

1  physicians greater weight based on their consistency with the greater objective record. (Tr.
2  at 22.)

3  Despite the ALJ's account of Plaintiff's right arm restrictions, Plaintiff asserts that
4  ALJ's decision fails to contain detailed findings. Plaintiff alleges that the ALJ failed to
5  specify how much weight he could lift with his right arm and claims that two physicians –
6  a State agency reviewing physician and Plaintiff's treating physician – opined that he could
7  not use his right arm in a work environment. The Court, however, disagrees and finds that
8  none of the evidence that Plaintiff cites undermines the ALJ's conclusion.

9  For example, the State agency reviewing physician to which Plaintiff refers (and the
10 ALJ cites to in her decision – Tr. at 22) opined that Plaintiff was limited to lifting with his
11 left arm but nonetheless concluded that Plaintiff was capable of the exertional demands of
12 light work. (Tr. at 189.)  Further, in February 2002, Plaintiff's treating physician, Sumit
13 Dewanjee, M.D., opined that Plaintiff could not use his right arm for work at all, but his
14 finding was temporary and was issued before Plaintiff's surgery – surgery that Dr. Dewanjee
15 opined would increase Plaintiff's employability. (Tr. at 198.)  Dr. Dewanjee made no
16 indication that Plaintiff could not use his left arm for work. (Tr. at 196-200.)

17 Plaintiff's citations to Dr. Broky's opinion and treatment records from physical therapy
18 in support of his argument are also unpersuasive. As previously stated, Dr. Broky concluded
19 that Plaintiff could lift and carry less than five pounds with the right upper extremity at any
20 time, and that he could lift and carry up to one hundred pounds occasionally and ten pounds
21 frequently with the left upper extremity. (Tr. at 262.)  Furthermore, the treatment records
22 from physical therapy are not acceptable medical sources. See 20 C.F.R. § 404.1513.

23 Plaintiff also claims that the ALJ failed to address "contrary" opinions regarding his
24 ability to feel, fine finger, and perform gross manipulations. Again, the evidence Plaintiff
25 cites fails to support his assertion. The State agency reviewing physician cited by Plaintiff
26 did not find any limitations in handling, fine fingering, feeling, or the ability to perform gross
27 manipulations. (Tr. at 191.)  Additionally, Dr. Broky did not, as Plaintiff cites, assess any
28

- 7 -

1  such restrictions. Dr. Broky indicated that Plaintiff could use either hand for handling and
2  fingering – but only to waist level on the right. (Tr. at 263.) Any limitation construed within
3  this opinion fails to have an impact on the ALJ's residual functional capacity assessment or
4  on Plaintiff's ability to perform the jobs identified by the vocational expert. Moreover, the
5  ALJ is not required to discuss every piece of evidence presented to him. See Vincent on
6  Behalf of Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984). Rather, she must only
7  explain why "significant probative evidence" has been rejected. See id.

8       Lastly, regarding Plaintiff's residual functional capacity assessment, Plaintiff alleges
9  that the ALJ failed to provide a detailed rationale regarding his mental impairments. Plaintiff
10 claims that the ALJ's decision is contrary to the findings of James E. Huddleston, Ph.D. and
11 Gregory Novie, Ph.D. However, Plaintiff's position is not supported by the evidence.

12      In considering Plaintiff's mental impairments, the ALJ again addressed Plaintiff's
13 subjective allegations. (Tr. at 21.) The ALJ found that although Plaintiff testified that he has
14 had "terrible" memory problems since his involvement in an automobile accident in 1972,
15 she noted that "[Plaintiff] was able to work in at least an unskilled job setting through 2001,
16 which demonstrates his memory problems are not completely debilitating." (Tr. at 21.)

17      The ALJ also considered the opinions of Dr. Huddleston (Tr. at 385-392), Dr. Novie
18 (430-441), and the State agency's reviewing physicians (Tr. at 393-406; 407-410). (Tr. at 21-
19 22.) The ALJ documented Dr. Huddleston's opinion stating that he "diagnosed major
20 depressive disorder, moderate, without psychotic features, chronic." (Tr. at 22.) Dr.
21 Huddleston opined that Plaintiff "could perform relatively simple and repetitive work tasks
22 without supervision, with mild limitations understanding, remembering and carrying out
23 instructions, and moderate limitations responding to normal work pressures and
24 accomplishing the demands of a normal work day." (Tr. at 22.) He further noted that
25 Plaintiff was not significantly impaired with regard to his capacity for understanding and
26 memory, sustained concentration and persistence, social interaction, or general adaptation.
27 (Tr. at 22.)

28

1          With regard to Dr. Novie's opinion, the ALJ reported that Dr. Novie diagnosed
2   Plaintiff with amnestic disorder due to head trauma, and "he opined that [Plaintiff] could be
3   severely limited in his ability to remember locations and work-like procedures and detailed
4   instructions, moderately-to-severely limited in his ability to perform activities within a
5   schedule and maintain competitive work standards." (Tr. at 22.)
6          The ALJ stated that she gave the opinions of Dr. Huddleston and the State agency's
7   reviewing physicians greater weight based on their consistency with the greater objective
8   record. (Tr. at 22.) She gave the opinion of Dr. Novie probative weight. (Tr. at 22.)
9          Plaintiff asserts that the ALJ failed to adopt the restrictions assessed by either Dr.
10  Huddleston or Dr. Novie. Plaintiff claims that the ALJ erred in relying on Dr. Huddleston's
11  opinion without explaining why she did not accept his indication that Plaintiff had "serious"
12  limitations in dealing with work stress. The Court disagrees.
13         First, the Court notes that Dr. Huddleston's correct indication regarding Plaintiff's
14  ability to deal with work stress was serious "But Not Precluded." (Tr. at 391.) Second,
15  despite this finding, Dr. Huddleston clearly opined that Plaintiff could work. (Tr. at 389-
16  390.) Dr. Huddleston stated, "[r]egarding his capacities to respond to normal work pressures
17  and to accomplish the demands of a normal work day, [Plaintiff] would likely suffer a
18  moderate limitation." (Tr. at 389.) "[Plaintiff] is not significantly limited with regard to his
19  capacity for understanding and memory, sustained concentration and persistence, social
20  interaction, or general adaptation." (Tr. at 390.)
21         Furthermore, regarding Dr. Novie, he indicated that Plaintiff was moderately limited
22  in his social interaction and adaptation skills, and in his ability to sustain an ordinary routine
23  without special supervision, work with others without being distracted and make simple,
24  work-related decisions. (Tr. at 440.) Dr. Novie also noted that Plaintiff had an "overall good
25  adjustment to his residual strengths and weaknesses." (Tr. at 436.)
26         Accordingly, contrary to Plaintiff's assertion that the ALJ erred by failing to set forth
27  a detailed decision describing Plaintiff's residual functional capacity with respect to Plaintiff's
28  right arm restrictions; Plaintiff's ability to feel, fine finger, and perform gross manipulations;

and Plaintiff's mental impairments, the Court finds that the ALJ provided: (1) a substantial and detailed discussion of the objective medical and other evidence; (2) a resolution of possible inconsistencies in the evidence; and (3) a logical explanation of the effects of symptoms on the individual's ability to work. The Court, therefore, finds that the ALJ provided an adequate assessment of Plaintiff's limitations and a narrative discussion of how the medical evidence and other evidence of record supported her assessment of Plaintiff's residual functional capacity. The ALJ's decision is supported by substantial evidence.

### B.     Plaintiff's Treating and Consulting Physician Evidence

Plaintiff alleges that the ALJ failed to properly reference the opinions of his treating and consulting physicians. Plaintiff cites to numerous treatment and evaluation records to support his position that he has limited use of his right upper extremity.

The Ninth Circuit has consistently held that the ALJ is responsible for determining credibility and resolving conflicts in medical testimony. See Magallanes, 881 F.2d at 750. While more weight is generally given to a treating physician's opinion than to the opinion of a non-treating physician, the treating physician's opinion is not necessarily conclusive as to either a physical condition or to the ultimate issue of disability. See id. at 751. The ALJ may disregard the treating physician's opinion whether or not that opinion is contradicted if he gives specific, legitimate reasons for doing so that are based on substantial evidence in the record. See Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1996); Magallanes, 881 F.2d at 751. The ALJ can meet this burden by setting out a detailed summary of the facts and conflicting evidence, stating his interpretation, and making findings. See Magallanes, 881 F.2d at 751. The extent that the non-treating physician's opinion rests on objective clinical tests, it must be viewed as substantial evidence. See id.

In his Motion, Plaintiff refers to a report completed by Dr. Dewanjee stating that Plaintiff had a rotator cuff tear that was "significantly painful which makes the use of his arm impossible for any type of work" until "possibly 7/01/02 @ earliest ... 7/1/03 at least [sic]." (Tr. at 198.) Dr. Dewanjee also indicated that he would reexamine Plaintiff on April 24, 2002, and that surgical repair would improve Plaintiff's employability. (Tr. at 198.) Further,

1  Dr. Dewanjee failed to give any indication that Plaintiff was disabled or that he could not use
2  his left arm for work, but, rather, stated that Plaintiff should change occupations. (Tr. at
3  199.) Finding that Dr. Dewanjee's report was somewhat ambiguous and not determinative
4  on the issue presented, the Court concludes that the ALJ committed no error by not expressly
5  addressing his report.

6  Plaintiff also refers to a conclusory notation from G. Herring, M.D., indicating that
7  Plaintiff was "unable to work due [to] recurrent dislocation [of his right] shoulder with
8  chronic pain and decreased range of motion." (Tr. at 372.) However, "[a] statement by a
9  medical source that [a claimant is] 'disabled' or 'unable to work' does not mean that [the
10 Commissioner] will determine that [the claimant is] disabled." 20 C.F.R. § 404.1527(e); see
11 also Batson v. Commissioner of the Social Security Administration, 359 F.3d 1190, 1195 (9th
12 Cir. 2004) (an ALJ may discredit treating physicians' opinions that are brief, conclusory, and
13 unsupported by the record as a whole or by objective medical findings). The regulations
14 specifically provide that the determination of whether a claimant is disabled is a
15 determination to be made by the Commissioner. See 20 C.F.R. § 404.1527(e). Because the
16 ultimate determination of disability is for the Commissioner, a treating physician's statement
17 that a claimant is disabled is not determinative, and the Commissioner is not bound by that
18 opinion. Furthermore, as with Dr. Dewanjee's opinion, nothing in Dr. Herring's comment
19 indicates that Plaintiff's left arm was impaired in any manner.

20 As previously stated, Plaintiff cites to numerous treatment and evaluation records to
21 support his position that he had limited use of his right upper extremity. However, there is
22 no dispute that Plaintiff was limited. In her decision, the ALJ clearly documents Plaintiff's
23 limitations consistent with those found by Plaintiff's physicians – and consistent with
24 Plaintiff's own testimony and statements. Based on the foregoing, the Court finds that the
25 ALJ did not err in her assessment of Plaintiff's treating and consulting physician evidence.
26 The ALJ supported her decision with specific and legitimate reasons based on substantial
27 evidence in the record.
28

### C.    **Plaintiff's Credibility**

Plaintiff further alleges that the ALJ erred in finding that his subjective complaints of pain were not credible. Plaintiff claims that the ALJ did not adequately explain her credibility findings.

As previously stated, the ALJ is responsible for determining credibility. See Magallanes, 881 F.2d at 750. When deciding whether to accept the subjective testimony of a claimant, the ALJ must perform a two-part analysis. In the first part, the claimant must (1) produce objective medical evidence of one or more impairments; and (2) show that the impairment or combination of impairments could reasonably be expected to produce some degree of symptom. See Smolen v. Chater, 80 F.3d 1273 (9th Cir. 1996). The claimant is not required to produce objective medical evidence of the symptom itself, the severity of the symptom, or the causal relationship between the medically determinable impairment and the symptom. See id. at 1282. Rather, the claimant is only required to show that the impairment could reasonably have caused some degree of the symptom. See id.

In the second stage of the analysis, the ALJ must assess the credibility of the claimant's testimony regarding the severity of the symptoms. If there is no affirmative evidence of malingering, the ALJ may reject the claimant's testimony only if the ALJ makes specific findings, stating clear and convincing reasons for the rejection. See id. at 1284. In evaluating the credibility of a claimant's testimony, evidence of claimant's daily activities, type and dosage of pain medication, treatment received, and the ALJ's own recorded observations of the claimant during the hearing are all relevant as part of the ALJ's overall assessment of the claimant. See Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991).

In finding that Plaintiff's allegations were partially credible, the ALJ observed several inconsistencies between Plaintiff's subjective complaints of disabling pain, his own testimony, and the greater objective record. The ALJ found that on August 11, 2003, Plaintiff rated his pain at a level 3 on a scale of 1 to 10, and indicated that this level was "acceptable" to him. (Tr. at 278.) The ALJ also noted that Plaintiff testified that he uses only one Vicodin per day, if he needs it, and that it provides full relief of his pain. (Tr. at 484.)

In addition, the ALJ found that although Plaintiff testified that he has had "terrible" memory problems since his involvement in an automobile accident in 1972 (Tr. at 474), she noted that "[Plaintiff] was able to work in at least an unskilled job setting through 2001, which demonstrates his memory problems are not completely debilitating." (Tr. at 21.) Thus, Plaintiff's own testimony and the objective record conflicted with Plaintiff's subjective complaints of disabling pain. This evidence served to undermine Plaintiff's allegations.

The ALJ also contrasted Plaintiff's complaints of disabling pain with evidence of Plaintiff's daily activities. Plaintiff testified that he uses his right hand on a limited basis for eating and occasional writing, and that despite persistent right hand palmar numbness, he can hold onto his keys with the right hand. (Tr. at 470-473; 476-477; 480-481.) Plaintiff also testified that he cannot lift his right arm overhead, but that he helps with housework, including washing the dishes and vacuuming the floors. (Tr. at 470-473; 476-477; 480-481.)

In summary, the ALJ provided a sufficient basis to find Plaintiff's allegations partially credible, including: evidence of Plaintiff's daily activities and inconsistencies between Plaintiff's subjective complaints of disabling pain, his own testimony, and the greater objective record. While perhaps the individual factors, viewed in isolation, are not sufficient to uphold the ALJ's decision to discredit Plaintiff's allegations of disabling pain, each factor is relevant to the ALJ's overall analysis, and it was the cumulative effect of all the factors that led to the ALJ's decision. The Court concludes that the ALJ has supported his decision to discredit Plaintiff's allegations with specific, clear and convincing reasons and, therefore, the Court finds no error.

### D. The ALJ's Reliance on Vocational Expert Testimony

Plaintiff contends that the ALJ improperly relied on the vocational expert's testimony without considering the vocational issues and job descriptions set forth in the Dictionary of Occupational Titles ("DOT"). Plaintiff alleges that the ALJ could not properly rely on the jobs identified by the vocational expert because, pursuant to the DOT, these jobs require frequent reaching and handling. Since the ALJ found that Plaintiff had limited reaching capacity in all directions with the right upper extremity, Plaintiff claims there is a conflict

between the vocational expert's opinion and the provisions in the DOT, which required the ALJ to seek further explanation according to Social Security Ruling 00-4p.

SSR 00-4p sets forth the actions required of an ALJ when there is an apparent conflict between the testimony of the vocational expert and the DOT. SSR 00-4p provides, in pertinent part:

> [o]ccupational evidence provided by a [vocational expert] or [vocational specialist] generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between [vocational expert] or [vocational specialist] evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the [vocational expert] or [vocational specialist] evidence to support a determination or decision about whether the claimant is disabled.

SSR 00-4p, 2000 WL 1898704 at *2 (SSA Dec. 4, 2000).

Although the jobs identified by the vocational expert appear to require frequent reaching and handling as set forth by the DOT, Plaintiff has not been precluded from frequent reaching and handling; Plaintiff only has limited reaching capacity in all directions with the right upper extremity including no overhead reaching. Thus, Plaintiff has been limited from a certain subset of reaching, not reaching altogether and he has no limitations with his left arm. Accordingly, there is no conflict between the testimony of the vocational expert and the DOT.

Moreover, the DOT is not the sole source of admissible information concerning jobs. The Commissioner may take administrative notice of any reliable job information, including the services of a vocational expert. The DOT itself states that it is not comprehensive, but provides only occupational information on –

> jobs as they have been found to occur, but they may not coincide in every respect with the content of jobs as performed in particular establishments or at certain localities. DOT users demanding specific job requirements should supplement this data with local information detailing jobs within their community.

Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995) (citing DOT at xiii). The Social Security Administration recognizes this limitation. "The DOT lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings." SSR 00-4p. "A [vocational expert], [vocational

specialist], or other reliable source of occupational information may be able to provide more specific information about jobs or occupations than the DOT." Id.  Thus, introduction of evidence of the characteristics of specific jobs available in the local area through the testimony of a vocational expert is appropriate, even though the job may vary from the way the job title is classified in the DOT.

Lastly, Plaintiff complains that the unarmed guard position is identified as semi-skilled and the ALJ limited Plaintiff to unskilled work.  Plaintiff claims that the ALJ failed to address this conflict.  After being questioned by the ALJ regarding the conflict, however, the vocational expert explained his testimony as to why the demands of the security guard job differed from the DOT.  (Tr. at 488.)  The vocational expert testified that the job did not require the amount of training necessary to be categorized as semi-skilled.  He stated that he had conducted surveys upon which this information was based.

Accordingly, the Court finds that no error occurred pursuant to SSR 00-4p.

## V. CONCLUSION

The Court finds that the ALJ properly concluded that Plaintiff is not disabled.  Based upon the foregoing discussion,

**IT IS ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. #23) is **DENIED**;

**IT IS FURTHER ORDERED** that Defendant's Cross-Motion for Summary Judgment (Doc. #27) is **GRANTED**;

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment accordingly.

DATED this 16th day of May, 2007.

_Michelle H. Burns_
Michelle H. Burns
United States Magistrate Judge